**Brigadier General Walter P. LEBER, Governor of the Canal Zone and President, Panama Canal Company, Appellant,**

v.

**CANAL ZONE CENTRAL LABOR UNION & METAL TRADES COUNCIL, AFL–CIO, et al., Appellees.**

**No. 23316.**

United States Court of Appeals
Fifth Circuit.
July 25, 1967.

John W. Douglas, Asst. Atty. Gen., Rowland K. Hazard, U. S. Atty., Alan S. Rosenthal and Richard S. Salzman, Attys., Dept. of Justice, Washington, D. C., John Ligtenberg, Gen. Counsel, American Federation of Teachers, AFL–CIO, Chicago, Ill., Andrew J. Leahy, Mary Lee Leahy, Chicago, Ill., of counsel, for appellant.

Thomas Morton Gittings, Jr., Washington, D. C., Albert J. Joyce, Jr., Balboa, Canal Zone, Arthur L. Ballin, New Orleans, La., for appellees.

Before RIVES and WISDOM, Circuit Judges, and CONNALLY, District Judge.

RIVES, Circuit Judge.

This appeal is from a decision by the District Court for the Canal Zone declaring that certain regulations issued by the Secretary of the Army are invalid, as contrary to provisions of the Canal Zone Code,[1] and enjoining the appellant from enforcing these regulations.[2] The involved sections of the Code authorize payment of an overseas differential in addition to basic compensation to each United States citizen employed in the Canal Zone by the executive branch of the United States Government. 2 C.Z.C. § 146. The differential is not to be in excess of an amount equal to 25 percent of the aggregate amount of the rate of basic compensation, plus special allowances not here material. In substance, the voided regulations reduce the differential from 25 percent to 15 percent. 5 C.F.R. § 1204.12 (1964 Rev., 1966 Pocket Supp.), now found in 35 C.F.R. ch. I, subch. E, revised as of January 1, 1967. They further provide that the differential will not be paid (1) to a married woman whose husband resides in the Canal Zone or the Republic of Panama unless the husband is 51 percent dependent upon her for his support or the woman is legally separated from her husband, or (2) to a child of a resident of the Canal Zone or the Republic of Panama who is under 21 years of age and is unmarried or who, regardless of age or marital status, does not maintain a separate household.

Appellees are five United States citizens employed by the Canal Zone Government or the Panama Canal Company. Two of the appellees are married women whose husbands are also employed by the Canal Zone Government or the Panama Canal Company. The Secretary of the Army who promulgated the regulations was not served with process and did not appear in the action.

■ We are of the opinion that the judgment of the district court should be reversed for three reasons: First the action should have been dismissed because the Secretary of the Army is an indispensable party;[3] second, the action was an unconsented suit against the United States; third, sound judicial administration requires that we also discuss the merits to meet the possibility that the Supreme Court, on review, may conclude that jurisdiction exists. We find that the regulations do not conflict with the pertinent and controlling sections of the Canal Zone Code, and are not invalid.

We first discuss the jurisdictional questions. Title 2, Section 155 of the Code provides:

"(a) The President shall coordinate the policies and activities of the respective departments under this subchapter, and may promulgate regulations necessary and appropriate to carry out the provisions and accomplish the purposes of this subchapter.

"(b) The President may delegate any authority vested in him by this subchapter, and may provide for the redelegation of any such authority."

Pursuant to this section, the President delegated his authority over wage and employment practices in the Canal Zone to the Secretary of the Army. Ex. Ord. No. 10794, December 12, 1958, 23 F.R. 9627, and Ex. Ord. No. 11171, August 20, 1964, 29 F.R. 11897.

---

1. 2 C.Z.C. §§ 141–156, 76A Stat. 16–20.

2. The district court's opinion is reported in Canal Zone Central Labor Union & Metal Trades Council v. Fleming, 246 F. Supp. 998, et seq.

3. The problem caused by not being able to serve an indispensable superior outside the territorial limits of the district court was almost completely alleviated by the enactment of 28 U.S.C.A. § 1391 (e). We say "almost" because the provisions of this statute do not apply to civil actions brought in the United States District Court for the District of the Canal Zone. See Doyle v. Fleming, D.C. Canal Zone 1963, 219 F.Supp. 277. We must, therefore, decide the thorny question of whether a superior official is an indispensable party.

Title 2, Section 142 authorizes the head of each department to conduct wage and employment practices in accordance with regulations promulgated by or under the authority of the President.[4] A "department" is defined to mean "a department, agency, or independent establishment in the executive branch of the Government of the United States (including a corporation wholly owned or controlled by the United States) which conducts operations in the Canal Zone."

■ The Canal Zone Government and the Panama Canal Company are departments within the meaning of the statutory definition.[5] It is clear, therefore, that wage and employment practices of these two entities are subject to regulation by the Secretary of the Army. He is the official charged with the responsibility of coordinating the policies and activities of the respective departments and promulgating regulations necessary and appropriate to carry out the intent of the statutes.

■ With these prefatory remarks, we apply the legal principles involved in determining whether the Secretary of the Army is an indispensable party. This Court has on more than one occasion recognized the difficulty in determining the indispensability of a superior governmental official as a defendant in a suit against his subordinate. Estrada v. Ahrens, 5 Cir. 1961, 296 F.2d 690; Johnson v. Kirkland, 5 Cir. 1961, 290 F.2d 440. The commentators share our uncertainty despite repeated efforts by the Supreme Court to clarify the principles involved.[6]

■■ As we read the controlling decisions of the Supreme Court, we find that "the superior officer is an indispensable party if the decree granting the relief sought will require him to take action, whether by exercising directly a power lodged in him or by having a subordinate exercise it for him." Williams v. Fanning, 1947, 332 U.S. 490, 493, 68 S.Ct. 188, 189, 92 L.Ed. 95. In Ceballos v. Shaughnessy, 1957, 352 U.S. 599, 603, 77 S.Ct. 545, 549, 1 L.Ed.2d 583, the Supreme Court noted that the resolution of the issue also depends on "the ability and authority of the defendant before the court to effectuate the relief" which is sought. See State of Colorado v. Toll, 1925, 268 U.S. 228, 45 S.Ct. 505, 69 L.Ed. 927; Johnson v. Kirkland, 5 Cir. 1961, 290 F.2d 440, 446. If the court having jurisdiction over the subordinate can grant effective relief without requiring any act by the superior, then the superior is not indispensable.

■ The Supreme Court stressed the need for practical considerations. Shaughnessy v. Pedreiro, 1955, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868. It is paramount that "[s]implified, workable procedures favoring judicial review should prevail over formalistic, technical concepts of the source of administrative authority." Estrada v. Ahrens, 5 Cir. 1961, 296 F.2d at 697.

Mindful of the ruling principles enunciated by the Supreme Court, we turn to the facts of this case. We conclude that any rights the appellees may have cannot be vindicated without specific action being taken by the Secretary of the Army. The Secretary must authorize the payment of any former differential.[7] He must order the payment to employees of any monetary losses resulting from in-

---

4. See also 2 C.Z.C. § 101, which provides that the Governor of the Canal Zone shall prescribe compensation of employees subject to supervision by the President or his delegate.

5. 2 C.Z.C. § 31. "The Canal Zone Government, an independent agency of the United States * * *."
 2 C.Z.C. § 61. "* * * the Panama Canal Company is continued as a body corporate and as an agency and instrumentality of the United States."

6. 3 Moore's Federal Practice, § 19.16; 2 Barron & Holtzoff, Federal Practice & Procedure, § 515; 3 Davis, Administrative Law Treatise (1958), § 27.08.

7. Prior to the 1964 revision, 5 C.F.R. § 1204.12 read as follows:
 "Tropical differential
 "A tropical differential not in excess of an amount equal to 25 per cent of the aggregate compensation established under §§ 1204.10 and 1204.11 will be authorized for U. S. citizen employees."

valid regulations. For duties of Secretary, see H. R. Rep. No. 1869 to accompany S. 1850, 85th Cong., 2d Sess. 7–8 (1958).[8] As in Johnson v. Kirkland, 5 Cir. 1961, 290 F.2d 440, this is a case where relief cannot be effectuated without specific action by the superior. The enjoining of the appellant without any action by the Secretary will not assure the payment of the 25 percent differential or reimbursement for any losses.[9]

The appellees contend that this suit is solely to enjoin the Governor of the Canal Zone, who is also the President of the Panama Canal Company, from further implementation, enforcement and application of the Secretary's regulations. They claim that there is no prayer or request for any affirmative action on the part of the Secretary. In short, they say that they are asking for a declaration that the regulations are invalid and that the appellant be enjoined from enforcing them.

Appellees admit that their primary goal is restoration of the 25 percent differential to all United States citizens. They suggest that the invalidation of the regulations will require the appellant to reinstate the 25 percent differential. Their entire argument rests on the proposition that it is mandatory that the tropical differential shall be no less than 25 percent. Avoiding form and paying heed to substance, we are quite sure that the appellees do not seek to enjoin the appellant from implementing any differential. If the appellant is enjoined from enforcing the newly promulgated regulations, then he is left with one of two courses: (1) He may reinstate the 25 percent differential, or (2) he may pay no differential. The appellees seek the first course; the second would deny them even half a loaf. Thus we reach the heart of this issue—can the appellant without any action on the part of the Secretary reinstate the 25 percent differential? We think not, and therefore conclude that the Secretary is an indispensable party.[10]

8. The Secretary must also perform acts not directly pertinent to the relief sought by the appellees. As coordinator and supervisor of the wage policy and activities of all department heads, the Secretary must see that employees of departments, other than the two headed by the appellant, receive reimbursements for any losses. He must also determine if the wage policies of other departments are to be adjusted in conformity with the wage standards adjudged mandatory for the Canal Zone Government and the Panama Canal Company.

9. Malone v. Bowdoin, 1962, 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168; Larson v. Domestic and Foreign Commerce Corp., 1949, 337 U.S. 682, 69 S.Ct. 1457, 93 L. Ed. 1628.

10. Assuming that the appellees sought no affirmative relief or had no inclination or desire that this action would require the appellant to reinstate the 25 percent differential, would the necessity of the Secretary acting at some later time in order to conform to the declaration of the court in this action require him to be a party to this action? The language in the cited Supreme Court cases and in the cases by this Court certainly suggest that proper judicial procedure would make indispensable any party who would be forced

to take action, even at a time in the future, as a direct result of the decision.

Were it not for statements indicating otherwise in the latest Supreme Court decisions, see especially Ceballos v. Shaughnessy, 352 U.S. 599, 77 S.Ct. 545, we might be persuaded by the reasoning of Professor Davis:

"Even though officers not before the court cannot be ordered to act or to refrain from acting, a declaratory judgment can be granted despite the fact that it will require officers not before the court to take affirmative action. For instance, in Ceballos, the declaratory judgment that the alien was eligible for deportation had the practical effect of requiring the Board of Immigration Appeals, not before the Court, to change its decision to the contrary. Furthermore, the equity court may grant a mandatory injunction against the subordinate, ordering him to transmit the decision and the order to the superior. Depending on circumstances, the subordinate may be enjoined from further action against the plaintiff until the superior has complied with the court's order or declaration.

"In the exceedingly unusual case in which a superior officer refuses to comply, a suit against the superior could be brought in the District of Co-

■■ This action is also an unconsented suit against the United States.[11] The complaint alleges that the appellant is acting in a manner not permitted by the statute. Normally such an allegation is a permissible basis for a suit against an individual, and the government is held not to have sufficient interest in the controversy to be considered an indispensable party. The government, however, does not always lack such interest in cases where the suit is nominally against the officer as an individual. Mine Safety Appliances Co. v. Forrestal, 1945, 326 U. S. 371, 374, 66 S.Ct. 219, 90 L.Ed. 140.[12]

■■■■■ In *Mine Safety Appliances*, the Supreme Court noting "the essential nature and effect of the proceeding" concluded that, where the suit was to collect money from the government and not the individual defendant, "the government is an indispensable party." 326 U.S. at 375, 66 S.Ct. at 221. The suit in that case was dismissed because the government was an indispensable party and had not consented to be sued.[13] In later decisions, the Court re-emphasized the rule that relief sought nominally against an official is in fact against the government "if 'the judgment sought would expend itself on the public Treasury or domain, or interfere with the public administration,' Land v. Dollar, 330 U.S. 731, 738, [67 S. Ct. 1009, 1012, 91 L.Ed. 1209] (1947), or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.' Larson v. Domestic & Foreign Corp., supra [337 U.S. 682] at 704 [69 S.Ct. 1457 at 1468] * * *." Dugan v. Rank, 1963, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15. See also State of Hawaii v. Gordon, 1963, 373 U.S. 57, 83 S.Ct. 1052, 10 L.Ed.2d 191.[14]

There is no dispute that the direct effect of the relief sought by appellees would expend itself on public appropriations. The United States was therefore an indispensable party and the district court for the Canal Zone was not a court in which the government had consented to be sued.[15]

Nonetheless, there is a possibility that the Supreme Court may differ with us on the jurisdictional questions, and we therefore discuss the merits of the case.[16]

■■■ The legislative history reveals that Congress intended that the Secretary possess discretionary authority to reduce the overseas differential to less than 25 percent. In 1912 Congress enacted per-

---

lumbia. The decision against the subordinate would probably be res judicata."
Davis, Administrative Law Treatise, § 27.08, p. 600, n. 48.

11. The appellant concedes that suits against the Panama Canal Company are authorized. 2 C.Z.C. § 65(a) (3). The indispensableness of the Secretary prevents this action.

12. If the complaint alleges that the official involved acts beyond his statutory powers, there normally is no need to join the government. Where action of the sovereign will be required, joinder is required. Larson v. Domestic and Foreign Corp., 1949, 337 U.S. 682, 691, n. 11, 69 S.Ct. 1457.

13. This Court has previously noted that the government is the real party in interest in suits brought against officials apparently acting within the ambit of a statute or a regulation. Estrada v. Ahrens, 5 Cir. 1961, 296 F.2d 690, 698. Federal statutes waiving governmental immunity in such suits indicate that the government is the real defendant. See, e. g., Federal Tort Claims Act of 1946, 28 U.S. C.A. § 2674.
The material question in this case is whether the government, being an indispensable party, has consented to be sued in the District Court for the Canal Zone.

14. This general rule has been criticized by one commentator, who has even suggested that the Supreme Court has not always adhered to the rule. Davis, Administrative Law Treatise, § 27.01 (1965 Supp.), pp. 149–154.

15. Wells v. United States, 5 Cir. 1954, 214 F.2d 380. Cf. 28 U.S.C. § 451; 28 U.S.C. § 1346(a) (2).

16. The jurisdictional issues are determined according to our reading of present Supreme Court cases. The doctrine of indispensableness and sovereign immunity are not so fixed as to be exempt from new interpretations and theories.

manent legislation providing for the maintenance and operation of the Panama Canal and the government of the Canal Zone. Act of August 24, 1912, ch. 390, 37 Stat. 560. Section 4 of the Act made the following provisions with respect to appointment and salaries:

" * * * persons necessary for the completion, care, management, maintenance, sanitation, government, operation, and protection of the Panama Canal and Canal Zone shall be appointed by the President, or by his authority, removable at his pleasure, and the compensation of such persons shall be fixed by the President, or by his authority, until such time as Congress may by law regulate the same, but salaries or compensation fixed hereunder by the President shall in no instance exceed by more than twenty-five per centum the salary or compensation paid for the same or similar services to persons employed by the Government in continental United States."

That language pertaining to the differential was retained in the subsequent legislation preceding the Act of July 25, 1958.[17]

In 1958 Congress passed legislation [18] which is now codified in the present Canal Zone Code.[19]

Section 146 in part provides:

"In addition to established basic compensation, there shall be paid to each employee who is a citizen of the United States such amounts *as the head of the*

---

*department concerned determines* to be payable, as follows:

" * * *

"(2) An overseas (tropical) differential not in excess of an amount equal to 25 percent of the aggregate amount of the rate of basic compensation so established and the amount of the allowance provided in accordance with paragraph (1) of this section." [Emphasis added.]

Section 101(b) of Title 2 of the Code retains the language found in earlier statutes:

"Compensation prescribed by the Governor under this section may not exceed, in any case, by more than 25 percent, the compensation paid for the same or similar services to persons employed by the Government in the continental United States." [20]

Our reading of the plain language of the present and prior statutes indicates that Congress intended that the heads of the departments on their own initiative or pursuant to controlling regulations [21] may pay a differential less than 25 percent.[22]

 The Congressional debates and hearings support this position. The purpose of an overseas differential is to enable "the President to secure competent services" outside the continental United States. 48 Cong. Rec. 6768. The Overseas Differential and Allowances Act, 5 U.S.C. § 3031 et seq., and section 204 of the Independent Offices Appropriation Act of 1949, 5 U.S.C. § 118h, do not per-

---

17. See, e. g., 2 C.Z.C. (1934 ed.) § 81(c). Section 3 of the Act of July 9, 1937, ch. 470, 50 Stat. 486.

18. Act of July 25, 1958, 72 Stat. 405 et seq.

19. 2 C.Z.C. §§ 141–156, 76A Stat. 16–20.

20. See also § 144 of Title 2.

21. Section 142 provides that each department head shall conduct wage practices in accordance with regulations promulgated by the President or his delegate.

22. "Such amounts as the head of the department concerned determines to be pay-

---

able" in Section 146 refers to the allowances for taxes noted in § 146(1) and the differential noted in § 146(2). This quoted clause does not merely authorize the department heads to compute the basic compensation and add the appropriate tax allowance plus 25 percent as the appellees suggest. This suggestion implies that Section 146 permits the department head to perform no more than mechanical computations and that the word "determine" means compute. We reject this narrow interpretation of the section.

tain to the Canal Zone, but do exhibit congressional intent to permit the President to offer monetary incentives to civilians employed outside the continental United States:

"A post differential may be granted on the basis of conditions of environment which differ substantially from conditions of environment in the continental United States and warrant additional compensation as a recruitment and retention incentive." 5 U.S.C.A. § 3038.

See also, H. R. Rep. No. 1869 to accompany S. 1850, 85th Cong., 2d Sess. 17 (1958).

Recognizing the purpose of overseas or tropical differential, we conclude that Congress meant to leave the amount of the differential to the discretion of the President and his delegates. Congress determined that the President had to decide what incentives were necessary to encourage civilians to work in hardship areas. The House Committee Report is instructive:

"Under [2 C.Z. Code ¶ 146(a) (2)] an overseas (tropical) differential *may be paid* in an amount not in excess of an amount which is equal to 25 percent of the aggregate amount of the rate of basic compensation established under [2 C.Z. Code ¶ 144] and the amount of the allowance provided in accordance with section [2 C.Z. Code ¶ 146(a) (1)]." (Emphasis added.)

The debates involving the Act of 1912 further reveal that the 25 percent figure was not a mandatory rate to be applied, but a ceiling not to be exceeded:

"Mr. Chairman, I think it is generally understood by gentlemen that we have been having to pay a differential of more than 25 percent—I think from 30 to 75 percent in some cases—down on the canal, and gentlemen have thought it was wise to put some limitation upon the amount of salaries to be fixed for these minor offices." (Congressman Adamson, 48 Cong.Rec. 6768.)

The challenged regulations which reduce the percentage to 15 percent are within the purview of Section 155 of Title 2. The Secretary has made a determination that a 15 percent differential will suffice to carry out the purposes of the Code. There has been no misuse of discretionary power by the enacting of the regulations.[23]

We also agree with the appellant that the district court erred in holding invalid the regulation excluding certain married women and children from receiving the differential. The court held that the regulation conflicted with language in Section 146, which it read as *requiring* a differential to be paid to *each* employee.

The appellant makes no attempt to interpret Section 146 in a manner which would permit the Secretary to pay the wage differential to some United States citizens but not to others. Instead, the appellant suggests that Section 142(b) (1) of Title 2 provides ample authority for the actions taken. This section provides:

"To the extent he deems appropriate, the President may:

"(1) exclude any employee or position from this subchapter or from any provision of this subchapter."

There is a dearth of legislative history concerning this section. It is suggested that this section was included solely to permit the President to exclude the Governor, the Deputy Governor, the President of the Canal Zone, and other similar officials from the provisions of the subchapter.[24] Certainly this interpretation

---

23. We agree with the appellant that if the Secretary's interpretation of the statute is not unreasonable it should be adopted by the courts. Udall v. Tallman, 1965, 380 U.S. 1, 18, 85 S.Ct. 792, 13 L. Ed.2d 616.

24. "*Mr. Hemphill.* Mr. Speaker, I have asked for this time only for the purpose of clarifying one section of the bill and one part of the report.

"Under Section 3 of the bill, item (b–1)

is possible and has some support in the congressional debates. However, we are not so certain as the appellees are that this is the meaning of Section 142(b) (1). The totality of the legislative history, including the debates and reports accompanying the bill,[25] indicate that Congress was mainly concerned with equal treatment for employees regardless of whether they were citizens of the United States or of Panama.[26] The statements of Congressman Hemphill, see note 24, supra, most probably were made to alleviate any fears that Section 142 would permit the President to deny benefits to employees on account of citizenship. It is extremely doubtful that this section meant that the President could exclude only executive officials from the provisions of the subchapter.[27]

A reading of all parts of the subchapter and an understanding of the purpose of the differential lead us to conclude that the Secretary could make reasonable exclusions of United States citizens from the benefits of the differential.

■ The appellees make a further argument which merits brief consideration. We quote directly from their brief:

"If the appellant's contention, that the language of subparagraph (2) of § 146, coupled with the language of § 142(a) (3) and § 155, is intended to confer discretion upon the Secretary of the Army to alter or reduce the amount of the

tropical differential by the issuance of regulations, is adopted, it plainly would be necessary to declare this subparagraph invalid as an improper delegation of the legislative power by Congress to officials of the Executive Branch."

The authorities cited by the appellees do not include recent pronouncements by the Supreme Court. The doctrine of delegated powers has undergone immense and radical change since the cases relied on by the appellees were handed down. See Davis, Administrative Law Treatise, §§ 2.01 and 2.04.

The Supreme Court upheld rules of the Interstate Commerce Commission which were promulgated pursuant to a section granting power to "administer, execute, and enforce all provisions of this part, to make all necessary orders in connection therewith, and to prescribe rules, regulations, and procedure for such administration." The Court, rejecting the argument that the rules were unauthorized, held:

"We hold then that the promulgation of these rules for authorized carriers falls within the Commission's power, despite the absence of specific reference to leasing practices in the Act. * * * The grant of general rule-making power necessary for enforcement compels this result."

on page 7, the President of the United States as administrative authority under the terms of this legislation, is authorized to exclude any employee or position from the act or provision of the act. I would like to read into the RECORD at this point a part of the able report made by the chairman of the subcommittee to the full committee. Page 3 of that report says:

"Section 3 authorizes and directs the head of each department or agency operating in the Canal Zone to conduct the employment and wage practices in accordance with the principles of the memorandum of understanding, the provisions of this bill, and regulations prescribed by or under the authority of the President. Also it authorizes the President to exclude any employee from

this act. *This exclusion is necessary in case of the Governor of the Canal Zone, the Deputy Governor, the President of the Panama Canal, and other similar officials.* [Emphasis added.] "I read into the RECORD for the purpose of clarification." 104 Cong.Rec. 11387.

25. H.R.Rep.No.737 to accompany S. 1850, 85th Cong. 2d Sess. (1958).

26. See Treaty of Mutual Understanding and Cooperation between the United States and the Republic of Panama, 72 Stat. 405, and the Memorandum of Understanding accompanying the treaty.

27. For other employees who have been excluded from various provisions of this subchapter, see 5 C.F.R. § 1201.100 (1964 ed.). Note 5 C.F.R. § 1201.3 (1964 ed.).

American Trucking Assns. v. United States, 1953, 344 U.S. 298, 312, 73 S.Ct. 307, 315, 97 L.Ed. 337.

In Carlson v. Landon, 1952, 342 U.S. 524, 542, 543, 544, 72 S.Ct. 525, 96 L.Ed. 547, the Supreme Court in upholding a delegation of authority to the Attorney General to grant or deny bail to aliens, pending determination as to their deportation, noted that

"the Attorney General is left without standards to determine when to admit to bail and when to detain. * * * Congress can only legislate so far as is reasonable and practicable, and must leave to executive officers the authority to accomplish its purpose. Congress need not make specific standards for each subsidiary executive action in carrying out a policy. * * * A wide range of discretion in the Attorney General as to bail is required to meet the varying situations arising from the many aliens in this country.

"The policy and standards as to what aliens are subject to deportation are, in general, clear and definite. * * * This is a permissible delegation of legislative power because the executive judgment is limited by adequate standards."

The purpose of the differential is admitted to be an inducement to get American citizens to work overseas in so-called hardship areas and to alleviate some of the financial burdens of taking such employment. We cannot say that these regulations conflict with the purpose of the legislation or in any manner overstep the limits or standards obviously implied.[28] On the contrary, they supplement legislation giving the President or his delegate supervisory authority over the maintenance and operation of the Panama Canal and the administration of the Canal Zone Government. We find no impermissible or unconstitutional delegation of powers by Congress to the President or his delegate.[29]

The judgment is therefore reversed with directions that the action be dismissed.

Reversed.

WISDOM, Circuit Judge (specially concurring):

I concur in the result and in that portion of the majority's opinion dealing with the merits. I question whether the Secretary of the Army was an indispensable party. Even though we hold against the plaintiffs on the merits, their theory of the case is that the injunction against the Canal Zone government was sought only to prevent enforcement of the 1964 Amendment. This injunction, as the plaintiffs contend, would leave in effect the original 25 per cent regulation. The superior officer, therefore, would not be required to act in order for the plaintiffs to obtain the relief they seek. See Estrada v. Ahrens, 5 Cir., 1961, 296 F.2d 690; Jaffe, Judicial Control of Administrative Action 157 (1965); Davis, Administrative Law Treatise § 27.08.

---

**28.** The contention that the regulations take away a needed monetary benefit should be addressed to the Secretary, possibly in a properly conducted administrative hearing, or to Congress. This Court cannot substitute its judgment for the Secretary's.

Lest we are misunderstood, we make no comment as to the correctness of the proceedings leading to the promulgation of the challenged regulations. Neither has there been any suggestion or indication that the regulations were promulgated in violation of proper administrative rules.

**29.** See State of Arizona v. State of California, 1963, 373 U.S. 546, 83 S.Ct. 1468, 10 L.Ed.2d 542.