LODGE 1647 AND LODGE 1904 AMER-
ICAN FEDERATION OF GOVERN-
MENT EMPLOYEES, and Arthur F.
Lia, Carl Walsh, Henry Chesko, John
May, Edward T. Coyle, Joseph Reina
and Robert Milukas, Plaintiffs,

v.

Robert S. McNAMARA, in his Capacity
as Secretary of Defense, United States
of America; Department of the Army,
United States of America; C. F. Mul-
laly, in his Capacity as Director of Ci-
vilian Personnel, Deputy Chief of Staff
of Personnel, United States Army; Unit-
ed States Material Command; U. S.
Army Electronics Command; Herbert
S. Bennett, in his Capacity as Grievance
Examiner, United States Army, Defend-
ants.

No. Civ–68–14.

United States District Court
M. D. Pennsylvania.

Oct. 9, 1968.

John E. V. Pieski, Scranton, Pa., for plaintiffs.

Edwin L. Weisl, Jr., Asst. Atty. Gen., Bernard J. Brown, U. S. Atty., Harland F. Leathers, Robert N. Ford, Attys., Dept. of Justice, for defendants.

SHERIDAN, Chief Judge.

This is an action against the Secretary of Defense, the Department of the Army, and certain of its officials for an order requiring them to process grievances of plaintiffs. Defendants' motion to dis-

miss, or in the alternative, for summary judgment is before the court.

The individual plaintiffs are electronics technicians [1] employed by the United States Army Electronics Command, North East Field Office, Fort Monmouth, New Jersey, and stationed at the Tobyhanna Army Depot, Tobyhanna, Pennsylvania. The union plaintiffs, Lodge Nos. 1647 and 1904 of the American Federation of Government Employees, represent employees of the Tobyhanna Depot and Fort Monmouth Command, respectively.

Plaintiffs invoke jurisdiction under 28 U.S.C.A. § 1361. The complaint alleges that during 1964, 1965 and 1966, plaintiffs accumulated a number of grievances primarily involving their supervisor, Boleslaw A. Skurnowicz, on matters relating to promotions, travel assignments, leave, work ratings, reprimands, and the like. On several occasions these grievances were orally brought to the attention of Skurnowicz's superiors. Plaintiffs also claimed that Skurnowicz engaged in unfair labor practices by discriminating against those who joined in the presentation of grievances. In June 1966, the grievances were reduced to writing and presented to the Department of the Army. There was a hearing in March 1967, but no action was taken. In July 1967, plaintiffs requested a hearing pursuant to Executive Order 10988, as implemented by the President's May 21, 1963, Memorandum, and pursuant also to Department of the Army Civilian Personnel Regulations CPR E6,[2] but these requests were denied, and instead, plaintiffs were informed that a "Type III" hearing [3] would be held pursuant to Department of the Army Civilian Personnel Regulations CPR E2 entitled "Grievance And Appeal Procedures."

A hearing was held at the end of August 1967. Plaintiffs complain because the hearing was not open to the public, a stenographer and the press were not permitted at the hearing, and there was a denial of the right to confront and cross-examine witnesses and to subpoena witnesses. Before a decision was handed down, plaintiffs filed the instant complaint. The record on these motions, however, includes certified copies of letters dated February 15, 1968, from the Department of the Army to the individual plaintiffs and their counsel, which set forth the action taken on the grievances. These letters were issued about one month after the complaint was filed. Plaintiffs are apparently dissatisfied since they insist that this court issue a mandatory injunction to compel defendants to hold a hearing pursuant to Executive Order 10988, as implemented by the Memorandum of May 21, 1963, on past complaints as well as on unfair and discriminatory conduct which they allege has continued to the present time. They also seek to dictate the procedures to be followed in the hearing.

Defendants argue that the action should be dismissed because the court lacks jurisdiction over the subject matter.

The purpose and effect of Executive Order 10988 are well stated in Manhattan-Bronx Postal Union v. Gronouski, 1965, 121 U.S.App.D.C. 321, 350 F.2d 452, cert. denied sub nom. Manhattan-Bronx Postal Union v. O'Brien, 1966, 382 U.S. 978, 86 S.Ct. 548, 15 L.Ed. 2d 469:

\* \* \* \* \* \*

"Executive Order 10988, issued January 18, 1962, 27 Fed.Reg. 551, grew

---

1. Arthur F. Lia, a plaintiff, died after the complaint was filed.

2. In the instant action, plaintiffs press only for a hearing pursuant to Executive Order 10988, as implemented by the May 21, 1963 Memorandum.

3. Type III grievances are defined as "expressions of dissatisfaction which arise either from the immediate work environment of the employee, from situations which exist within the employees work group, or from policies, regulations, or directives of the local employing activity or installation."

out of the report of the President's Task Force on Employee-Management Relations in the Federal Service. That report recognized the frustrations that not infrequently assail federal employees as they observe the organizational activities of workers in private industry and what they assume to be the correspondingly greater role of the latter in the shaping of employment policies. Although the complete assimilation of the one type of employment to the other was thought to be impossible, the Order was intended to provide a framework for the collective expression by federal employees of their views about the terms and conditions of their employment. *This was a project of the Executive, and not of the Congress.* Executive Order 10988 does not, in its recitals, refer to any statute other than the Act of March 3, 1871, 5 U.S.C. § 631, which generally authorizes the President to issue regulations for the admission of persons into the civil service of the United States and for the governance of their conduct thereafter. *The President, thus, was under no obligation to issue the Order; and his action in doing so was simply in furtherance of a personal policy of trying to enhance the attractiveness and efficiency of federal employment.*

\* \* \* \* \* \*

"Executive Order 10988 represents in essence a formulation of broad policy by the President for the guidance of federal employing agencies. *It had no specific foundation in Congressional action, nor was it required to effectuate any statute. It could have been withdrawn at any time for any or no reason.* It represented simply one President's effort to move in the direction of what he had been advised by his experts would be an improvement in the efficiency of federal employment. *As we have indicated, he imposed no hard and fast directives on the many different kinds of federal employees;* and he left large areas for the exercise of discretion at levels below the summit, although he went to some pains to provide continuing advisory services from those people and agencies within his Administration equipped with special knowledge or experience in personnel matters. \* \* \* (Emphasis supplied.)

■ It is not necessary to detail the requirements of Executive Order 10988 and the Memorandum of May 21, 1963, or the Department of the Army Regulations related thereto, or to determine the precise procedure to be followed in processing grievances. All of the proceedings are executive in character. The complaint must be dismissed on the doctrine of sovereign immunity, and because this court is without jurisdiction either to compel the Department of the Army to process grievances in accordance with procedures different than those employed or to compel compliance with any applicable procedure.

The decree requested by plaintiffs would declare that Executive Order 10988 and the Memorandum of May 21, 1963, particularly Section 3.3(a) (2) and (b) thereof, is the sole procedure by which grievances are to be processed,[4] regardless of agency regulations, and impose upon the Department of the Army the obligation of treating it as such. In effect, this seeks relief against the United States on a matter with respect to which the United States had not consented to be sued. Manhattan-Bronx Postal Union v. Gronouski, supra; Congress of Racial Equality v. Commissioner, Social Security Administration, D.Md.1967, 270 F. Supp. 537. Moreover, the action is not based upon the violation of a statute or regulation promulgated pursuant thereto, nor is it claimed that the procedures

4. Such a declaration would be contrary to Section 3.3(a) (1) of the Memorandum of May 21, 1963: "In cases initiated by an employee or several employees with the same complaint, in which the matter in issue is subject to an applicable grievance or appeals precedure [sic] within the agency, such procedure shall be the exclusive procedure used."

followed are unconstitutional.[5] The action is based solely on an executive policy. The court is without jurisdiction. Manhattan-Bronx Postal Union v. Gronouski, supra; National Ass'n of Internal Rev. Employees v. Dillon, 1966, 123 U.S.App. D.C. 58, 356 F.2d 811; Canal Zone Central Labor Union & Metal Trades Council, AFL-CIO v. Fleming, D.Canal Zone 1965, 246 F.Supp. 998, rev'd on other grounds sub nom. Leber v. Canal Zone Central Labor Union & Metal Trades Council, 5 Cir. 1967, 383 F.2d 110; Morris v. Steele, D.Mass.1966, 253 F. Supp. 769. In Gronouski, in setting forth the role of the courts in connection with Executive Order 10988, the court said:

"The President did not undertake to create any role for the judiciary in the implementation of this policy. The question of his power to do so aside, he was, at least in this matter of determining representational rights, emulating the example of Congress, which has shown a marked disinclination to intrude equity courts into this process.

" * * * That action does not seem to us to conflict with the Executive Order. But, even if it did, it does not follow that appellants have a right of such nature as to warrant intervention by an equity court. If appellants disagreed with the Postmaster General's decision as to this aspect of personnel policy, and believed it to be contrary to the President's wishes, it is obvious to whom their complaint should have been directed. It was not to the judicial branch. Congress has given the District Court many important functions to perform, but they do not include policing the faithful execution of Presidential policies by Presidential appointees."

And in Fleming, the court said:

"The plaintiff, Canal Zone Central Labor Union and Metal Trades Council, AFL-CIO, does not have standing to sue as a result of Executive Order 10988 (3 C.F.R., 1959-63 Comp., p. 521). As stated by defendants' counsel, it is no more than a declaration of policy by the President for the internal management of the Executive Branch of the United States Government enforceable only by the President through administrative measures. It is not based upon a statute nor a provision of the Constitution and thus the courts have no jurisdiction over an action for enforcement." [6]

■■ While plaintiffs in their complaint have not shown any statutory or other duty owing to them which could be enforced under 28 U.S.C.A. § 1361, in their brief they cite 5 U.S.C.A. § 702 for the proposition that a person adversely affected or aggrieved by agency action is entitled to judicial review thereof. They fail to stress the important words of that statute, i. e., that such grievance by agency action "[must be] within the meaning of a relevant statute." They cite also 5 U.S.C.A. § 556(d) for the elements of procedure that a hearing must include. This section, however, has no application to matters relating to the internal management of an agency. 5 U.S.C.A. § 553 (formerly Section 1003); Seaboard World Airlines, Inc. v. Gronouski, D.D.C.1964, 230 F.Supp. 44. The other statutory sections cited by plaintiffs are not relevant.

5. Cf. Seebach v. Cullen, N.D.Calif.1963, 224 F.Supp. 15, aff'd 9 Cir. 1964, 338 F.2d 663, where though jurisdiction, as here, was based on 28 U.S.C.A. § 1361, the matters complained of were controlled by statute. Cf. also Congress of Racial Equality v. Commissioner, Social Security Administration, D.Md.1967, 270 F.Supp. 537.

6. In Canal Zone, while the district court held that it had no jurisdiction to enforce Executive Order 10988, it retained jurisdiction and disposed of issues arising from enforcement of the provisions of certain Canal Zone statutes. The court of appeals, for various reasons, reversed the district court and directed that the action be dismissed. Implicit in the court of appeals decision, therefore, is approval of the district court's decision that the court had no jurisdiction to enforce an action based on Executive Order 10988.

The action will be dismissed.[7] In view of this disposition, it will not be necessary to consider defendants other ground that the plaintiffs lack standing,[8] or to consider the motion for summary judgment.[9]

---

7. In dismissing this action for lack of jurisdiction over the subject matter, the court has considered not only the complaint and exhibits, but also regulations, etc., submitted under affidavit. Cohen v. American Window Glass Co., 2 Cir. 1942, 126 F.2d 111; Ellis v. Stevens, D. Mass.1941, 37 F.Supp. 488; 2A Moore, Federal Practice para. 12.09 [2], [3] (2d ed.).

8. While defendants have not assigned as a ground the failure to join an indispensable party, if appears that the Secretary of the Army, who is not joined, is indispensable. Leber v. Canal Zone Central Labor Union & Metal Trades Council, 5 Cir. 1967, 383 F.2d 110.

9. Manhattan-Bronx Postal Union v. Gronouski, 1965, 121 U.S.App.D.C. 321, 350 F.2d 451, cert. denied sub nom. Manhattan-Bronx Postal Union v. O'Brien, 1966, 382 U.S. 978, 86 S.Ct. 548, 15 L.Ed.2d 469.