**BOSTON PUBLIC HOUSING TENANTS' POLICY COUNCIL, INC., et al.**

v.

**James T. LYNN et al.**

**Civ. A. No. 70-1626-F.**

United States District Court,
D. Massachusetts.

Oct. 30, 1974.

Gershan M. Ratner, Boston Legal Assistance Project, Boston, Mass., for plaintiffs.

William Hughes, Asst. U. S. Atty., Boston, Mass., for defendant U. S. A.

George F. Mahoney, Boston, Mass., for defendant Boston Housing Authority.

## ORDER

FREEDMAN, District Judge.

This case is a class action, brought by and on behalf of the tenants of Boston's 15 major low-income housing projects, seeking a judicial order compelling the United States Department of Housing and Urban Development (HUD) and the Boston Housing Authority (BHA) to upgrade the quality of the living conditions in the Boston projects. The complaint alleges that HUD and the BHA have consistently failed in their duty to maintain the projects in a "decent, safe,

and sanitary condition." This alleged failure to act relates to two separate forms of agency inaction and therefore involves two separate legal issues calling for distinct prayers for relief. The first involves issues pertaining to federal funding and seeks an order of the Court forcing HUD to allocate a greater amount of its funds to the BHA to upgrade and maintain the Boston projects. The second issue in the case would require the Court to delve into the defendants' managerial practices and seeks an injunction compelling the BHA to fully implement the recommendations in HUD's *Comprehensive Consolidated Management Review Report of the Boston Housing Authority* (hereinafter referred to as the "HUD report") wherein the BHA is cited for numerous management deficiencies. Plaintiffs also seek an injunction ordering HUD to supervise the BHA's implementation of the HUD report.

There is presently pending in the federal courts in Washington, D. C. an action [1] having federal funding issues virtually identical to the funding issue in this case. As such, the Court has agreed, during the pendency of that litigation, not to take any action in this case pertaining to the "funding issue." What is before the Court, with respect to the "management issue" only, are *Plaintiffs' Motion for Summary Judgment* and the *Federal Defendants' Renewed Motion for Judgment on the Pleadings* on which arguments were heard by the Court September 24, 1974.

### Federal Defendants' Motion

The federal defendants have renewed a motion made previously before the prior district judge in this case. Normally the Court will not entertain motions previously made and acted upon. Yet the actions of the prior judge relating to the federal defendants' original motion leave some question in the Court's mind as to the motion's present status. Therefore, the Court reluctantly concludes that the federal defendants' motion must be examined anew.

The basis of the plaintiffs' claim against the federal defendants lies in the proposition that " . . . [the United States Housing Act of 1937, 50 Stat. 888, as amended, 42 U.S.C. § 1401 et seq. (hereinafter referred to as "the Act")] imposes the ultimate responsibility and *duty* . . . on [HUD] *to ensure* that all federally funded projects are maintained in 'decent, safe and sanitary condition.' " *Plaintiffs' Complaint*, p. 6 (emphasis added). The complaint lists a series of specific sections [2] in the Act which allegedly support this statement. On the other hand, the federal defendants state that " . . . [n]owhere in any of the statutes is HUD given the responsibility or duty to insure that all federally funded projects are maintained in decent, safe, and sanitary condition." *Federal Defendants' Memorandum in Support of Renewed Motion for Judgment on Pleadings*, p. 11. Whether or not this duty exists within the Act is dispositive of the "management issue." Therefore, the Court's analysis begins with an examination of the sections cited by the plaintiffs.

After careful study of the pertinent statutory provisions, the Court can find no judicially enforceable duties or responsibilities on the part of HUD to insure that all federally funded low-cost housing is maintained in "decent, safe,

---

1. In National Association of Housing and Redevelopment Officials, et al. v. Lynn, Civil Action No. 2080–72, the plaintiffs seek an injunction compelling HUD to provide additional funds to the BHA and other local housing authorities to upgrade the quality of living conditions in their respective low-income housing projects. The Court is informed that the District Court in that case has recently granted the government's motion for summary judgment. Nevertheless, this Court has not yet seen a copy of Judge Pratt's order nor have the plaintiffs exhausted all possible avenues of judicial relief. Therefore, Judge Pratt's order will not be taken into account in this case at this time.

2. 42 U.S.C. §§ 1401, 1402(1), (2), 1403, 1410 (a), (b), (e), 1413(a), 1414, 1415(3), (4), (7), and 1421a.

and sanitary condition." On the contrary, HUD's duty is to employ its funds *"to assist* the several States and their political subdivisions . . . [in remedying] . . . the acute shortage of decent, safe, and sanitary dwellings for families of low income." 42 U.S.C. § 1401 (emphasis added). The local public housing authorities, not HUD, are vested with the " . . . maximum amount of responsibility in the administration of the low-rent housing program." *Id.*

When HUD financially assists a local housing authority, the Act requires an annual contributions contract to be signed. 42 U.S.C. § 1410(a). HUD has the right under the Act to insert in any such contract a provision or condition insuring that the local housing authorities preserve the "low-rent character" [3] of the housing project involved. 42 U.S.C. § 1415(4). The Act gives HUD the option of invoking certain remedies for breach of the conditions embodied in the annual contributions contract. 42 U.S.C. §§ 1413, 1415(3), 1421a. Thus HUD has the right or authority, but not the duty, to insure that the local housing authorities provide decent, safe, and sanitary housing.

█ Nor can the Boston tenants succeed to these rights solely because they are the ultimate beneficiaries of the contract. They are mere incidental beneficiaries and thus do not acquire true "third party beneficiary" status.

█ Plaintiffs assert that "as parties aggrieved by agency action" they are entitled to judicial review pursuant to the Administrative Procedure Act, 5 U.S.C. § 702. *Brief in Opposition to Federal Defendants' Motion for Judgment on the Pleadings and Local Defendants' Motion to Dismiss,* p. 5. Yet the APA requires more than just an allegation of injury.

Plaintiffs must show that " . . . the interest sought to be protected . . . is arguably within the zone of interests to be protected or regulated by the statute . . . in question." Data Processing Service v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed. 2d 184 (1970). Surely if an interest is meant to be protected by Congress, the resulting piece of legislation must specify enforceable duties designated as protective of that interest. In this case, the Act fails to create any duties owed to the tenants by HUD to insure that all federally funded low-cost housing is maintained in "decent, safe, and sanitary condition." *See* Lodge 1647 & Lodge 1904 American Federation of Government Employees v. McNamara, 291 F.Supp. 286 (M.D.Pa.1968). Thus, it is plain that the interests of the aggrieved Boston tenants do not fall " . . . within the zone of interests to be protected . . . by the statute . . . in question." Data Processing Service v. Camp, *supra,* at 153, 90 S. Ct. at 830; see 5 U.S.C. § 702. Consequently, the tenants lack standing to sue the federal defendants in this case.

Assuming *arguendo* that the plaintiffs have standing herein, there are other persuasive reasons for denying judicial review of the federal agency's actions in this case.

The Administrative Procedure Act contains an exception precluding judicial review if " . . . agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). "This is a very narrow exception (footnote omitted) . . . The legislative history of the Administrative Procedure Act indicates that it is applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" Citizens to Preserve Overton Park v. Volpe, 401

---

3. HUD has defined the term "low-rent character" as being synonomous, in part, with "decent, safe, and sanitary condition." *Terms and Conditions Constituting Part Two of a Consolidated Annual Contributions Contract*

*Between Local Authority and the United States of America,* HUD–53011, § 201–202, Nov. 1969 (hereinafter referred to as the ACC). *See* H.R.Rep.No.1545, 75th Cong., 1st Sess., p. 8 (1937).

U.S. 402, 410, 91 S.Ct. 814, 820, 28 L. Ed.2d 136 (1971), citing S.Rep. No. 752, 79th Cong., 1st Sess., p. 26 (1945). Absent a duty owed by HUD to insure that federally funded low-cost housing be decent, safe, and sanitary, it is inconceivable that HUD's responsibilities in this case are anything but discretionary. The Court is therefore at a loss to find an applicable law to apply.

The alleged standard of "decent, safe, and sanitary" housing is a subjective term at best. Congress recognized this fact when it stated the national housing goal to be the " . . . realization *as soon as feasible* of the goal of a decent home and a suitable living environment for every American family . . . ." (emphasis added) The Housing Act of 1949, 42 U.S.C. § 1441. See Housing and Urban Development Act of 1968, 42 U.S.C. § 1441a. Whether the implementation of the remainder of HUD's recommendations to the BHA would substantially further this goal is a question best left to those in the executive branch with the necessary expertise to make a responsible and informed choice.

Finally, there is no allegation in the pleadings that the HUD report is mandatory in nature. In fact, the introduction to that report states that its " . . . purpose . . . has been to assist in solving the present difficulties and to make recommendations that are designed to help the [BHA] . . . in its efforts to achieve improvement." HUD report, p. 2. For this or any other Court to hold HUD judicially liable for the implementation of such a report, formulated solely to assist a local housing authority, would be to discourage progressive reform efforts on the part of the national agency. While HUD has the authority under its annual contributions contract with the BHA to make these recommendations mandatory, there is no duty to do so nor any indi-

cation that they in fact did in the case at bar.

Therefore, plaintiffs' "management claim" against HUD fits within the narrow confines of the exception to judicial review in 5 U.S.C. § 701(a)(2). For this reason, and because the plaintiffs lack standing to sue HUD, the federal defendants' renewed motion on the pleadings is granted and HUD is released from any and all liability in this case with respect to the "management issue."

### Plaintiffs' Motion

Plaintiffs have moved, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment by alleging that there are no genuine issues of material fact remaining to be proven in this case. The Court agrees with this statement, but only with respect to the "management issue."[4] It is uncontroverted that the 15 low-cost housing projects which are the subject of this suit are in a deplorable state of disrepair. Also uncontroverted is the failure of the BHA to fully implement 48 of the 96 recommendations embodied in the HUD report.

█ The prior judge in this case twice denied the nonfederal defendants' *Motion to Dismiss.* Therefore, for the purposes of plaintiffs' *Motion for Summary Judgment,* it is assumed that (1) the complaint states a claim upon which relief can be granted, and (2) the plaintiffs have standing to sue the BHA. Having disposed of the "management issue" with respect to HUD, what remains is a determination as to whether the BHA should be judicially compelled to implement the HUD report.

██ The determination can be stated briefly. The HUD report is couched

---

4. As stated previously, any action by the Court on the "funding issue" has been stayed pending the result of the Washington, D.C. litigation.

in advisory terms only. Any other interpretation would necessitate a strained reading of the language therein. While HUD has the general power to make implementation of such "recommendations" [5] mandatory, there is no indication in this case that it did. Just as the Court of Appeals, in Bromley-Heath Modernization Committee v. Boston Housing Authority, 459 F.2d 1067 (1 Cir. 1972), declined relief to tenants whose claim was based upon a non-mandatory HUD circular, so also does this Court deny plaintiffs' claim seeking the implementation of recommendations designed solely "to assist" the BHA in its administrative duties. Therefore, summary judgment is granted defendant Boston Housing Authority.[6]

One can only sympathize with the plight of the tenants residing in Boston's low-income housing projects. The projects are mismanaged and in a poor state of repair. Yet the federal courts cannot pretend to be the cure-all for America's housing ills. Federal courts lack the expertise, the staff, and the Congressional mandate to do the job. On the other hand, the Housing Court for the City of Boston, which has been established by state legislation, which is better suited to solve the enormous housing problems encountered by the tenants of Boston.[7] Yet in the last analysis, long range answers can best be provided by the "political branches" of government. It is they who have the resources, the duty, and the power to make significant changes in the field of housing.

5. The Act grants HUD broad rule-making powers in 42 U.S.C. § 1408. More importantly, HUD could have imposed, pursuant to 42 U.S.C. § 1415(4), a condition in its annual contributions contract, that such recommendations must be implemented.

6. The Court is cognizant of the fact that it has found against the moving party in this summary judgment motion even though a cross-motion has not been filed. This procedure is supported by a majority of the

modern courts who have faced this situation. 6 Moore's Federal Practice ¶ 56.12 at 2241 et seq.

7. The Housing Court has the authority to provide tenants relief from violations of the State Sanitary Code. M.G.L. c. 111, § 127H, inserted by St.1965, c. 898, § 3, and as amended by St.1972, c. 201; M.G.L. c. 185A, § 3. See, West Broadway Task Force v. Commissioner of the Dept. of Community Affairs, Mass., 297 N.E.2d 505, 511 (1973).