Walter A. **REINHEIMER** et al.,
Appellants,

v.

The **PANAMA CANAL COMPANY,**
Appellee.

No. 25975.

United States Court of Appeals
Fifth Circuit.

June 20, 1969.

Betty H. Olchin, Balboa, Canal Zone, Marvin Schwartz, New York City, for appellants.

Dwight A. McKabney, James B. Denman, Balboa Heights, Canal Zone, for appellee.

Before GEWIN and GODBOLD, Circuit Judges, and CHOATE, District Judge.

GEWIN, Circuit Judge:

The appellants are five vessel pilots employed by the appellee Panama Canal Company. They brought this class action against the Company in the United States District Court for the District of the Canal Zone on behalf of the pilots and pilots-in-training employed by the Company, seeking a declaratory judg-

ment that, under Canal Zone statutes and regulations, they are entitled to a "tropical differential," i.e., compensation for overseas service in addition to a base salary. The appellants' complaint alleged two different theories—referred to as causes of action—for arriving at the base salary upon which to compute the tropical differential. Although we do not have before us the portion of the record relating to the district court's disposition of the second of the appellants' theories, the court apparently dismissed that theory from the case, calling its ruling a grant of summary judgment. The court declined to grant "summary judgment" as to the portion of the appellants' complaint containing another computation theory. However, after a full trial on the merits, the court granted summary judgment for the Company on the basis of Leber v. Canal Zone Central Labor Union[1] which was handed down subsequent to the trial. We agree with the appellants that the court below misapprehended the import of the *Leber* case; accordingly, we reverse the judgment of the district court and remand the case for further proceedings, including the making of appropriate findings of fact and conclusions of law.[2]

## I

The Panama Canal Company is a corporate agency of the United States[3] whose employment practices, among oth-er things, are subject to regulation by the Secretary of the Army[4] in accordance with the applicable provisions of the Canal Zone Code.[5] Subsection 144 (b) of title 2 of the Code states in pertinent part: "The rates of basic compensation *may be established* and revised in relation to rates of compensation for the same or similar work performed in the continental United States * * *."[6] The permissive *may* of this statute is transformed into a mandatory *shall* in the Secretary's regulations:

> (b) Rates of pay * * * for all security positions *shall be established* in relation to rates for the same or similar work performed in the continental United States by employees of the Government of the United States. * * *

> (c) The rates established under this section constitute the base salary or wage rates for the positions in question.[7]

In addition to the base salary thus provided for, the Code also provides that employees who are United States citizens must be paid "an overseas (tropical) differential not in excess of an amount equal to 25 percent of the aggregate amount of the rate of basic compensation * * *."[8] Prior to 1964, the regulations merely repeated the statutory language permitting a differential

---

1. 383 F.2d 110 (5th Cir. 1967), *rev'g* Canal Zone Central Labor Union and Metal Trades Council, A.F.L.-C.I.O. v. Fleming, 246 F.Supp. 998 (D.C.Z.1965), *cert. denied*, Bramlett v. Leber, 389 U.S. 1046, 88 S.Ct. 769, 19 L.Ed.2d 838 (1968).

2. Fed.R.Civ.P. 52(a).

3. 2 C.Z.C. § 61(a) (1962).

4. The regulatory authority over the employment practices of governmental departments within the Canal Zone is vested in the President, 2 C.Z.C. § 155 (1962), but the authority has been redelegated to the Secretary of the Army. 35 C.F.R. § 251.2(a) (1967).

5. 2 C.Z.C. §§ 141–156 (1962).

6. 2 C.Z.C. § 144(b) (1962) (emphasis added) ; previously section 5(b) of the Act of July 25, 1958, 72 Stat. 407, Pub.L. No. 85–550.

7. 35 C.F.R. § 253.131(b) & (c) (1967) (emphasis added) ; previously 5 C.F.R. § 1204.8 (1959), 24 Fed.Reg. 353 (Jan. 15, 1959), amended 28 Fed.Reg. 14261 (Dec. 25, 1963). There is no dispute in this case that pilots and pilots-in-training occupy "security positions."

8. 2 C.Z.C. § 146(2) (1962). Subsection 146(1) grants employees a tax allowance but that provision is not involved here; although the appellants alleged in their complaint that the tax allowance was due, the issues set forth in the pre-trial order relate only to the tropical differential.

up to 25 percent,[9] thus leaving to the discretion of the Company—subject to a requirement of uniformity of compensation [10]—the determination of the precise amount of the differential. In 1944, the Secretary amended the regulations to specify a lower amount for the differential and to make certain categories of employees ineligible for the differential.[11]

In the *Leber* case, five of the Company's employees who had been made ineligible for the differential by the Secretary's 1964 amendments to the regulations contended that the new regulations contravened the Code provision establishing the differential. In rejecting the contention, the court stated:

> Recognizing the purpose of overseas or tropical differential [to encourage United States citizens to work overseas], we conclude that Congress meant to leave the amount of the differential to the discretion of the President and his delegates.[12]

In response to the Company's motion for summary judgment, the court below expressed the view that *Leber* held that the Company had complete discretion regarding payment of the tropical differential. The court was of the opinion that the Secretary of the Army had re-

delegated his authority to the Company by the promulgaton of the regulations relating to the differential.

We cannot accept the district court's view of either the *Leber* case or the regulations. *Leber* does indicate that the heads of the various departments in the Canal Zone possess considerable discretion concerning the differential.[13] Indeed, this is clear from the facts that both statute and regulation, prior to 1964, permitted the department head to set the differential at any percentage up to 25 percent. However, the Secretary carefully circumscribed the scope of the department head's discretion by requiring that the differential "shall be uniform within and among all departments." [14] The Company's answers to the appellants' interrogatories indicate that it paid all other eligible employees a 25 percent differential prior to the 1964 amendment and the appropriate percentage thereafter. Thus the Company could not simply refuse to pay the differential to the pilots. If the Company found "practical difficulties or unnecessary hardships" involved in paying the pilots a differential, the Secretary's regulations provided a procedure for obtaining authority to deviate from the regulatory provisions.[15] In the absence of authority to deviate,[16] however,

9. 24 Fed.Reg. 353 (Jan. 15, 1959).

10. The regulation then applicable, 5 C.F.R. § 1204.2, stated in part:

> The rates of basic compensation for positions and employees, the overseas (tropical) differential and additional approved additives, such as tax factor, shall be uniform within and among all departments.

The substance of this regulation is now codified in 35 C.F.R. § 253.102 (1967).

11. *See* 35 C.F.R. § 253.135 (1967).

12. 383 F.2d 110, 118 (5th Cir. 1967).

13. 383 F.2d at 117 n. 22.

14. See note 10 *supra*.

15. 35 C.F.R. § 253.6 (1967) provides:

> Whenever compliance with the strict letter of the regulations in this part would create practical difficulties or unnecessary hardships, the Secretary of the Army may, upon recommendation of

> the [Canal Zone Civilian Personnel Policy Coordinating] Board, permit a deviation from these regulations. Such authority may be granted only if the deviation is within the spirit of the regulations, and the efficiency of the Government and the integrity of the Canal Zone Merit System are protected and promoted. Any deviation authorized, and the reasons therefor, shall be made a matter of record.

16. We have been unable to discover any authorization by the Secretary of Army for a deviation from the regulations relating to the tropical differential. However, since this question was not covered by the parties' briefs, we leave final determination of the matter to the district court. If the Secretary has published an authorization for a deviation by the Company, that would obviously conclude the matter.

the Company was legally obligated to pay the differential required by the applicable regulations during the relevant period.

## II

Although for purposes of decision our consideration of this appeal could end here, efficiency in the administration of justice compels us to attempt to obviate some of the confusion in this case.[17] The appellants' complaint stated a single claim for relief, i.e., the payment of the differential required by the regulations. However, the complaint stated alternative theories for computing the amount of the differential due. First, the appellants suggested that the amount of the differential should be determined on the basis of the salary which the pilots had actually received during the relevant time periods, apparently inviting the court to presume that the salary received was "base salary" for purposes of determining the amount payable as differential. Alternatively, the appellants suggested that the Company be required to establish the base salary of pilots in relation to the rates for the same or similar positions in the continental United States and then to compute the differential as thus derived.

Apparently the district court originally ruled, early in the proceedings below, that the first alternative was the appropriate method of computation and dismissed the second alternative.[18] As already indicated, the portion of the trial transcript relating to the court's action on the second alternative is not included in the record and thus we have no way of knowing whether the appellant's objected to the court's ruling. However, since we are of the opinion that the

court's ruling was *plain error*, we must recognize it even in the absence of an objection.[19] Our discussion in part I of this opinion makes clear that the Company must set the pilots' base salary in relation to rates for the same or similar work performed in the continental United States by employees of the Government of the United States. The Company does not dispute this proposition but argues instead that the appellants cannot prevail because there are no such same or similar positions from which to derive the Canal pilots base salaries. In another part of its brief, the Company undermines this argument by contending that Navy pilots are the most similar continental positions and that "[t]he Company, therefore, could pay its pilots base rates fixed in relation to the Navy pilots' rates if it chose to do so."

■ In any event, it is perfectly clear from the record before us that there are at least two *similar* positions in the continental United States in relation to which the pilots' base salaries could be derived, *viz.*, MSTS masters or mates and Navy pilots. The affidavit of the Company's personnel director states in pertinent part:

> The Company considers that the position of master of ocean-going vessels is not comparable to the position of its pilots, either as to duties and responsibilities or as to the circumstances under which the respective employments are performed. The principal point of difference is that for the captain of an ocean-going ship navigation in confined waters is a minor part of his duties if, indeed, he performs any at all, whereas a Panama Canal pilot handles such navigation almost exclu-

---

17. *See* SEC v. National Securities, Inc., 393 U.S. 453, 465, 89 S.Ct. 564, 21 L.Ed. 2d 668, 678–679 (1969); Miller v. International Paper Co., 408 F.2d 283, 288–289 (5th Cir. 1969).

18. We are, of course, well aware that the appellants labeled each of the two alternatives as a separate "cause of action" and that the district court apparently labeled its ruling a grant of summary judgment.

However, we are not bound by the labels used by either the appellants or the lower court. It is clear to us that the appellants stated a single claim upon which relief could be granted and that the precise method of computing the relief is a matter which may be cured by amendment upon remand.

19. *See* Sheppard Fed. Credit Union v. Palmer, 408 F.2d 1369 (5th Cir. 1969).

sively. Accordingly, the Company prior to April 1958 used masters' rates for certain classes of vessels only as bench marks to each of which a number of different pilots' rates were related for purposes of pay adjustments. Commencing April 20, 1958 the use of maritime rates even as bench marks was discontinued altogether and the present pay system was adopted.

\* \* \* \* \* \*

The Company considers that there is no pilotage work performed by employees of the United States Government in the continental United States that is sufficiently comparable to provide an appropriate wage base for Panama Canal pilots. The Department of the Navy hires pilots in the United States but their duties are considered to be generally less difficult than those of the Company's employees. The Navy pilots' rates, which are substantially lower than those paid to Panama Canal pilots, have not been used as a base for wage-fixing by the Company.[20]

The Company appears to read the regulations to mean that the pilots' base salary shall be fixed at the *same rate for the same position* in the continental United States. The regulations simply do not advert to the same rate or solely to the same position. The provision states that the base salary rates "shall be established *in relation to* rates for the same or *similar* work performed in the continental United States \* \* \*." [21]

The Secretary obviously anticipated that every position in the Panama Canal Company would not have an exact equivalent in the continental United States. Thus the regulations permit the derivation of appropriate rates from merely similar continental positions. The fact that the pilots in the continental United States operate primarily in different waters or have different duties and responsibilities does not make them wholly dissimilar. The differences simply require adjustment of the salary rates. Thus, insofar as a similar continental position entails greater responsibility or requires higher qualifications, the Canal Zone rate must be adjusted downward to an appropriate level; conversely, insofar as the continental position entails less responsibility or requires lower qualifications, the Canal Zone rate must be adjusted upward to an appropriate level.

It should be noted that we make no findings whatever as to which similar continental position or positions are most appropriate for use in deriving the base salaries for the various levels of pilots and pilots-in-training during the years involved in this case. We find only that there are some similar positions which can be used by the Company to derive the base salaries. Additionally, we think it appropriate to permit the parties to introduce evidence upon remand as to any factual issues raised by this opinion.

20. The personnel director's affidavit also refers to members of state pilots' associations. However, since those pilots are not federal employees, their rates are not relevant under the regulations.

In Boyd v. Panama Canal Co., 160 F. Supp. 50 (D.C.Z.1958), the district court, in a slightly different context, recognized that Canal pilots are similar "in many ways" to MSTS masters and mates. In rejecting the Company's contention that state pilots were the only positions "directly comparable" to Canal pilots, the court stated:

The state pilots perform duties that are quite similar to those of plaintiffs but masters and mates of vessels also perform many similar duties and defendant through its governors, presidents and personnel executives has recognized this similarity and used it in arriving at wage scales.

\* \* \* \* \*

Their [state pilots'] methods of assignment to ships, their qualifications, their working hours all are different than those of the Canal Zone Pilots so the Court cannot agree that they occupy the only directly comparable positions in private industry. They are comparable in many ways but so are masters and mates.

*Id.* at 59.

21. See text accompanying note 7 *supra*.

The judgment of the district court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.