Walter A. **REINHEIMER** et al.,
Plaintiffs,

v.

PANAMA CANAL COMPANY, a corporation, Defendant.

Civ. No. 2668.

United States District Court,
D. Canal Zone,
Cristobal Division.

May 19, 1972.

Marvin Schwartz, New York City, Betty H. Olchin, Balboa, Canal Zone, for plaintiffs.

Dwight A. McKabney and Michael M. Parrish, Balboa Heights, Canal Zone, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW IN FIRST HEARING STATEMENT OF CASE

CROWE, District Judge.

This is a class action brought by five Panama Canal Company pilots on behalf of themselves and all other persons employed by the defendant as Panama Canal pilots and pilots-in-training, seeking a declaratory judgment on the grounds that their wages, including a tropical differential, were not properly computed and established.

As stated in the opinion of the United States Court of Appeals, rendered in this case on June 20, 1969, 413 F.2d 153, "The appellants' complaint alleged two different theories—referred to as causes of action—for arriving at the base salary upon which to compute the tropical

differential." In the first, it was alleged that the Canal Zone statute and regulations issued pursuant thereto required the defendant to pay to the plaintiffs, who are United States citizens, a tropical differential which was the same as that paid to its other employees, and that it was required to add this to the plaintiffs' base pay.

The complaint alleged that the defendant had never computed and added the tropical differential to plaintiffs' pay and that when the amount of the differential for other employees was reduced to 15% in 1964 and a fixed differential was established, defendant not only did not add the differential but claimed that 20% of plaintiffs' base salary was their differential.

The second cause of action alleged that the defendant failed to set the plaintiffs' base wage as required by the statute and regulations and had failed to establish rates of pay for the Canal pilots in relation to the same or similar work performed for the United States Government in the continental United States.

The relief sought on the first cause of action was a declaration and judgment that defendant pay to plaintiffs the tropical differential in addition to the sums previously paid and redetermine the fixed differential as of July 20, 1964, and on the second cause of action, that defendant determine the wages it should have paid plaintiffs in relation to the same or similar work performed for the United States Government in the continental United States, and pay plaintiffs such additional sums as it should have paid.

The action was begun on January 8, 1965 and the Canal Zone Statute of Limitations limits claims of this nature to three years prior to the commencement of the action, although the effective date of the regulations of the Secretary of the Army was the first pay period for plaintiffs, which began more than 60 days after January 15, 1959.

## MOTIONS FOR SUMMARY JUDGMENT

The defendant moved for summary judgment dismissing the complaint pursuant to Rule 56(b), Federal Rules of Civil Procedure. The Court granted partial summary judgment on the second cause of action holding that defendant had discretionary authority to fix the pilots' and pilots'-in-training base pay and that there was no genuine issue as to any material fact relative to the second cause of action. The Court failed to hold that the regulations of the Secretary of the Army limited the Company's discretion and required it to set the pilots' pay in any specific way or gave plaintiffs enforceable rights.

Motion for summary judgment on the first cause of action was denied, and it was held that the plaintiffs were entitled to receive a differential to be added to their base pay, and that issues of fact were to be determined upon trial. Defendant argued that it was not required to pay the differential to the pilots because it had the permissive authority to pay its vessel employees in accordance with the wage practices of the maritime industry. [5 U.S.C. Section 5342(a)] This permissive statute was held not to authorize defendant to disregard the statutes and regulations applicable to its United States citizen employees employed in the Canal Zone.

After a full trial on the merits, the Court then granted summary judgment for the defendant on the basis of Leber v. Canal Zone Central Labor Union & Metal Trades Council, 383 F.2d 110 (5th Cir. 1967), which was handed down after the trial but before judgment.

The plaintiffs appealed the decision of this court and the appellate court reversed the judgment and remanded the case for further proceedings, including the making of appropriate findings of fact and conclusions of law.

There is still pending a motion for Partial Summary Judgment made by defendant on April 17, 1970. This motion

is to the effect that, as decided in *Leber*, the plaintiffs have no statutory right to have their base pay fixed in any particular way or to receive any overseas differential and that such right is dependent on the regulations issued by the Secretary of the Army, 253.131(b) and 253.135 of Title 35, Code of Federal Regulations, and that the claim is limited by his new regulations effective February 20, 1970 establishing a new method of computation of plaintiffs' salaries.

Briefs were filed supporting the motion and opposing it but no decision was ever rendered as it was not brought to the Court's attention for a ruling, although throughout the pretrial hearings and subsequent proceedings it appears that the parties tacitly accepted that the final date of the plaintiffs' claim is the effective date of the new regulation.

## FINDINGS OF FACT

In compliance with the mandate of the appellate court, the following findings of fact and conclusions of law are made. These findings are relative to the trial which was conducted in the Canal Zone on April 10, 11, 12, 13 and 14, 1967, and are filed prior to the entry of findings and final judgment in the case as the result of the trial, which was conducted as a consequence of the appellate opinion, beginning on February 28 and terminating on April 30, 1972. (This trial was delayed because of an intensive study conducted by the defendant pursuant to this Court's order which will be dealt with in the findings as a consequence of that trial.) The filing of the findings in the first trial will not prejudice the parties as to the beginning of the running of the time for taking of an appeal. The time for taking of an appeal as to all matters in the case will begin running upon the entry of the findings and judgment pertaining to the "second trial".

1. This is a civil action commenced on January 8, 1965, against the Panama Canal Company, a corporate agency and instrumentality of the United States. The Company was established for the purpose of maintaining and operating the Panama Canal, and of conducting business operations incident thereto. [2 C.Z.C. Section 61, 76A Stat.]

2. The plaintiffs, Walter A. Reinheimer, John M. Stuart, William T. Clute, Norman M. Currier, and Dean K. Bruch, are men employed or formerly employed by the defendant as vessel pilots on the Canal and adjacent Canal Zone waters. The plaintiffs, who sue on behalf of themselves and as representatives of a class consisting of all Panama Canal pilots and pilots-in-training, seek a declaratory judgment concerning their compensation and ask money damages for certain elements of back pay.

3. The Panama Canal Company is the only federal agency in the Canal Zone that employs vessel pilots, and the Company performs the only pilotage service in the Canal Zone waters.

4. During the period after January 8, 1962, the Panama Canal Company did not fix the pay of its vessel pilots in relation to rates for the same or similar work performed in the continental United States by employees of the Government of the United States, although such method was prescribed by the Canal Zone regulations then in effect, which were published at 35 CFR 253.-131(b); [prior to December 25, 1963, the regulation appeared at 5 CFR 1204.-8]. For and prior to the said period, the Company gave consideration to fixing the pay of its vessel pilots in relation to the rates of pilots and U. S. Navy shipyards in the continental United States and the compensation earned by members of private pilot associations in various United States ports. The Company decided, however, that neither the Navy positions nor the self-employed private pilots provided a satisfactory base for use in fixing the Canal pilots' rates. The reasons were that the work performed by Navy pilots was considered to be substantially less difficult than that performed by Canal pilots and, with respect to the earnings of self-employed pilots, it had been found to be difficult to obtain accurate data suitable

for conversion to a schedule for salaried pilots. The Company's decision was erroneous as the appellate court stated in its opinion: "The Secretary obviously anticipated that every position in the Panama Canal Company would not have an exact equivalent in the continental United States. Thus the regulations permit the derivation of appropriate rates from merely similar continental positions. The fact that the pilots in the continental United States operate primarily in different waters or have different duties and responsibilities does not make them wholly dissimilar. The differences simply require adjustment of the salary rates. Thus, insofar as a similar continental position entails greater responsibility or requires higher qualifications, the Canal Zone rate must be adjusted downward to an appropriate level; conversely, insofar as the continental position entails less responsibility or requires lower qualifications, the Canal Zone rate must be adjusted upward to an appropriate level."

5. From May 1951 to March 1955, the Panama Canal Company fixed the rates of pay for its vessel pilots by using benchmarks consisting of the rates for masters of ocean-going vessels of two or more vessel classes taken from the wage scales of the Navy's Military Sea Transportation Service (MSTS), which were derived from corresponding rates in the American merchant marine. Those benchmarks determined the range of the longevity scale consisting of five or more pay steps for qualified pilots. That scale was adjusted with reference to, and kept in coordination with, the pay rates (including tropical differential) of supervisory and management personnel of the Canal Company who were paid at grade levels from GS–12 to GS–14. The rates of pay for Canal pilots that were made effective March 13, 1955 [and which continued in effect through April 19, 1958] were fixed in the following manner: the first or lowest rate for qualified pilot was the same as the rate of pay for an MSTS master on a class "D" vessel, while the sixth or highest step for qualified pilot was the same as the rate for an MSTS master on a class "A" vessel. The four intermediate pay steps on the pilots' longevity scale were allocated between the first and the sixth steps with equal increments.

6. On May 21, 1951, the Company, through the Governor, approved a formula for pilots' pay based directly on MSTS rates for masters of vessels for Class E, for Qualified Pilots, to Class A, for top longevity step pilots. This formula did not add a 25% tropical differential to a base, and it was the opinion of the Company that in the United States maritime service rates were fixed by taking into account a wide variation in working conditions ranging from tropical to arctic service and, therefore, that a tropical differential was included.

7. On April 22, 1952, the Governor-President of the Panama Canal Company appointed an advisory board for pilots' pay and work conditions, and on the basis of the reports by its membership the Governor-President concluded that rates for pilots employed by the Department of the Navy were not appropriate as a base for the Panama Canal pilots and that the use of MSTS masters' rates was a sound wage base and more equitably related to the work and responsibility of the Panama Canal pilots than any other.

8. Subsequently the formula for top pilots' pay was not followed by the defendant company for the application of the MSTS masters for A–3 Class vessels would have caused the Panama Canal Company pilots' pay to exceed that of other employees in the Panama Canal Company.

9. On April 20, 1958, the Panama Canal Company discontinued use of the MSTS masters' rates as benchmarks for fixing the scale of Canal pilots' pay. On that date, it began to establish the rates of pilots' pay in relation to the salaries received by U. S. citizen personnel in supervisory, professional and management positions who were compensated under the so-called General Schedule (GS) that is prescribed by law for the majority of white-collar Federal employees in the

continental United States. The pilots' scale was fixed within the range of GS–12 to GS–14. Subsequently, when a single-wage system became effective in February 1959 pursuant to law [Pub.L. 85–550] for Federal employees in the Canal Zone, the Canal pilots' rates began to be adjusted in relation to the rates (including tropical differential) of U. S. citizen employees in the nonmanual (NM) category in grades NM–12 to NM–14.

10. The Canal Zone compensation regulation providing for the payment of a tropical differential in addition to base salary [35 CFR 253.135] was amended by the Secretary of the Army on July 29, 1964 to reduce the amount of the tropical differential from 25% to 15% of base pay and to provide that those employees then on the rolls should retain the actual dollar amount of the tropical differential they were receiving prior to July 5, 1964 until such time as increases in the base salary would cause the 15% differential (calculated upon such base) to exceed the frozen retained differential. In order to comply with the amended regulation, the Canal Company separated (and published for the first time) the portion of pilots' pay that constituted the tropical differential. This was done by taking 20% of the gross, regular pay rate for a 40-hour week as the tropical differential. This procedure was based upon the action taken with respect to the corresponding grades NM–12 to NM–14 with which the pilots' rates were coordinated. It had not been thought by the defendant to be necessary to prescribe for Canal pilots a "constructed United States base rate (without differential) or the basic salary (without tax factor or differential) that would be paid to non-United States citizens if they were to be employed in pilot positions" as only U. S. citizens were so employed.

## CONCLUSIONS OF LAW

▮ 1. The authority of the Panama Canal Company to fix the rates of pay for its vessel pilots is subject to lim-

itation or direction under regulations issued by the Secretary of the Army in accordance with Sections 142, 144, 155 of Title 2, C.Z.C., 76A Stat. 16–17, 19; 35 CFR 251.2(a).

▮ 2. Under the Canal Zone compensation regulations in effect during the period after January 8, 1962, the Panama Canal Company was obligated to, but did not, establish the rates of pay for plaintiffs and the class of pilots and pilots-in-training that they represent in relation to rates of compensation for the same or similar work performed in the continental United States by employees of the Government of the United States. On February 20, 1970, new regulations of the Secretary of the Army became effective and the question of their effect in limiting the period of the claim from January 8, 1962 to February 20, 1970 will be dealt with in the findings of fact and conclusions of law in the second trial held in 1972. [35 CFR 253.131(b), 1970 Ed.] Although the Canal Zone compensation regulations prescribed a procedure by which the Panama Canal Company could have obtained permission from the Secretary of the Army to deviate from the regulation relating to the tropical differential, no such deviation was authorized. 35 CFR 253.6.

▮ 3. The Panama Canal Company is obligated, for the period after January 8, 1962, to set the base salary rates for its vessel pilots in relation to the rates for the same or similar work performed in the continental United States by employees of the Government of the United States. The Canal Company is also obligated to calculate and apply the tropical differential prescribed by the controlling regulations during the period aforesaid. Both the new base rate and the corresponding tropical differential are required to be established retroactively, and each pilot or pilot-in-training who has received compensation at a lower rate during the period is entitled to recover from the Canal Company the amount of any underpayment stemming from the application of such rates.

Similarly, in each case in which the application of the new base rate and the corresponding differential results in entitlement to a lesser sum of compensation than a pilot actually received, the Canal Company is entitled to recoup the amount of the overpayment from the employee in question.

4. A judgment and determination of costs will not be made until the entry of findings in the "second trial".