**Walter A. REINHEIMER et al.,**
**Plaintiffs,**

v.

**PANAMA CANAL COMPANY, a corporation, Defendant.**

**Civ. No. 2668.**

District Court, Canal Zone,
Cristobal Division.

July 5, 1972.

Marvin Schwartz, New York City, Betty H. Olchin, Balboa, Canal Zone, for plaintiffs.

Dwight A. McKabney and Michael M. Parrish, Balboa Heights, Canal Zone, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SECOND HEARING

CROWE, District Judge.

### STATEMENT OF CASE

Findings of fact and conclusions of law concerning the "First Hearing" conducted from April 10 through 14, 1967 were entered in the case on May 19, 1972, D.C., 342 F.Supp. 315, in compliance with the Court of Appeals decision rendered June 20, 1969, 5 Cir., 413 F.2d 153, and those findings and conclusions are referred to for all matters prior to the beginning of the "Marine Pilot Wage Base Study" (hereafter referred to as the Wage Study) conducted by the defendant pursuant to an Order of this Court entered September 24, 1969.

After the date of the Order directing the Wage Study, the defendant formulated a Study Committee composed of the following:

| Name | Title |
|------|-------|
| Bernard H. Hyllestad | Transportation Specialist, GS–15, Maritime Division, Office of Assistant Secretary for Policy and International Affairs, Department of Transportation |
| William R. Murden | Chief, Plant and Supply Branch, GS–15, Operations Division, Civil Works Directorate, U. S. Army Corps of Engineers |
| William E. Hopkins | Assistant Captain of the Port, Port of Cristobal, Canal Zone |
| George L. Stelluto | Project Director, Industry and Union Wage Surveys, GS–14, Bureau of Labor Statistics, U. S. Department of Labor |
| Robert D. Pitcher | Personnel Management Specialist, GS–14, Office of Personnel and Training, Compensation and Executive Staffing Division, Department of Transportation |
| Robert W. Koontz | Personnel Management Specialist, GS–14, Regional Office of Civilian Manpower Management, Jacksonville, Florida, Department of the Navy |
| Donald G. Brauer | Occupational Specialist, GS–13, Bureau of Policies and Standards, U. S. Civil Service Commission |
| William D. Young | Chief, Wage and Classification Branch, NM–13 (GS–13), Personnel Bureau, Panama Canal Company |

These members were selected from the various Federal agencies as shown and in addition "to provide added objectivity and credibility" to the study, defendant contracted with the firm of Ernst and Ernst, a private consultant with offices throughout the United States. Two of its members, Erwin W. Winguth and Howard M. Peek, traveled with the main Study Group and participated in the job-site review and the analysis and evaluation of the facts gathered. The Wage Study contains a biographical sketch of each of the participants. The Wage Study is Defendant's Exhibit 1–B in the Second Hearing and is referred to for the details concerning the qualifications of the Study Committee.

The Study Committee conducted a wage study and prepared schedules of proposed retroactive pay rates for its vessel pilots and pilots-in-training for the period from January 8, 1962 through its completion in December 1969, and it was filed in response to Court Order on February 16, 1970.

Plaintiffs refused to accept the Study and its proposed pay rates and thereafter conducted wide discovery proceedings. Extensive inspection of documents in defendant's possession was made, depositions of members of the Study Committee were made, along with those of the Corporate Secretary, the Personnel Director, and the Deputy Personnel Director. Thirty or more were deposed in the

Canal Zone, San Francisco, and Washington and plaintiffs' counsel characterized the Study as a "wonderfully packaged phoney." A "Bill of Particulars" was filed in support of this position in which plaintiffs' counsel complained of the "Lack of Expertise of the Study Group," the "Factual and Professional Errors" made by it, and the Study Group's "General Lack of Credibility."

The trial was held on plaintiffs' objections to the Wage Study beginning on February 28 and, after an enforced recess, terminating on March 30, 1972. Defendant assumed the burden of going forward to establish the validity of the Study and plaintiffs were permitted to present proof to attack it, choosing only one expert.

Previous to the "Second Hearing" on April 17, 1970, defendant had filed a motion for Partial Summary Judgment. This motion is to the effect that, as decided in Leber v. Canal Zone Central Labor Union and Metal Trades Council, 5 Cir., 383 F.2d 110, the plaintiffs have no statutory right to have their base pay fixed in any particular way or to receive any overseas differential and that such right is dependent upon the regulations issued by the Secretary of the Army, 253.131(b) and 253.135 of Title 35, Code of Federal Regulations, and that the claim is limited by his new regulations effective February 20, 1970 establishing a new method of computation of plaintiffs' salaries.

## FINDINGS OF FACT

1. The Committee that made the Wage Study was unusually competent. The defendant requested assistance from the various Federal agencies but the individuals who made the Study, except William E. Hopkins and William D. Young, were chosen by the agencies and not the defendant. The selection of the representatives of the private agency, Ernst and Ernst, was also done by that firm and not by defendant. Plaintiffs' only witness testified that the group was well chosen and well qualified. Its members were experienced in management, marine operating activities, and position and pay management. The use of the Committee gave to the Study an objectivity and credibility that would not have been achieved had the defendant used its own personnel alone.

2. The use of a committee of the quality employed was a proper and professional way to proceed with the Study and there is no evidence that the Wage Study was contrived. The Committee's performance in conducting the Study is entitled to credibility and displayed the necessary expertise in its approach to the problem that completely negates the imputation of arbitrariness and capriciousness.

3. The composite of the three top Navy pilot jobs at Hunters Point, Mare Island and Treasure Island, San Francisco, California, for comparison was correct. Defendant could have used the position of any U. S. Government employee doing similar work in the continental United States as a basis as long as proper weighting up or down with relation to duties, responsibilities and qualifications was done. Masters of MSTS vessels could have been usd as well as any of the pilots in the positions surveyed in the Study. Actually the MSTS Class A Masters' salaries affected the Study as the Navy pilots' pay is directly related to them by a fixed percentage factor. The Committee's selection of the composite as the "most similar" for purposes of establishing a base was a wise and prudent action.

4. The data collected were good and the method of weighting was well done. The plan used in constructing the Evaluation Standard employing critical job factors, description of job factors, assigned point value, and conditions for maximum rating was professional and in accordance with textbook standards and approved wage fixing practices. The Committee used as its reference text, "Job Evaluation" by Jay L. Otis and Richard H. Leukart. Dr. Jay L. Otis testified as plaintiffs' only witness at this hearing.

5. Use of the base as determined from a study of the "top pilots" was a proper one for computation of the salaries of various levels of pilots and pilots-in-training during the years involved in the case. In the Navy pilots there are three pay steps with a waiting period of 52 weeks and 78 weeks respectively between the steps. The training and promoting of pilots in the Canal Zone is a program of gradual development and assignment to larger and larger vessels that is quite different from anything shown to exist in U. S. Government piloting in the United States. As long as proper weighting and evaluation methods are used in fixing the salaries of the various levels of the pilots appropriate bases can be fixed for them as well as one can be fixed for the top pilots. The Navy pilots' positions are "similar" to their positions for wage fixing purposes.

6. The Committee's position evaluation plan demonstrated that the Panama Canal pilots' position was valued at 131% over the Navy pilots' position and it was recommended that this percent should be considered a guide rather than an absolute in making pay fixing decisions. Arithmetical values were assigned to each job factor and distributed over a scale of 1,000 points. The evaluation process resulted in 933.8 points for the top Panama Canal pilot job and 711.6 points for the Navy pilot job, a difference of about 31% (or 131% of Navy).

7. The fact that both salaries were known to the Committee early in the Study, although possibly not within the best rules of wage fixing practice, could hardly be avoided. The Committee had to go upon the scenes and make detailed studies of the positions so hours of work, overtime, and pay practices would necessarily be learned in making such a comparative study. If the Committee were corrupt and the Study contrived whether the salaries of the two positions were known at the inception or termination of the Study would be of little importance.

8. It would have been better to have had a third, fourth, or fifth position to be evaluated to develop a wage curve or pay line. Unfortunately no such positions were a part of the Study and the point difference in the jobs was considered by the Committee as more of a guideline than an absolute difference.

9. As a calculation was made by the defendant on the basis of 131%, in 235 cases out of 248 it was found that there is a gross of approximately $185,000.00 due to plaintiffs and that the defendant is entitled to recoup about $152,000.00 on the basis of the overpayment.

10. The method of evaluation was a quantitative system and use of the median was proper as it is an acceptable personnel technique.

11. Upon completion of the trial but before submission an offer was made by this Court to appoint a Special Master qualified equally in job evaluation and wage administration with plaintiffs' and defendant's personnel experts, in accordance with Rule 53(a), Federal Rules of Civil Procedure, to make recommendations for findings and conclusions relative to the technical phases of the Wage Study. This offer was made in view of the Court's own lack of expertise in the field but neither plaintiffs nor defendant acquiesced and the plan was not pursued further.

12. The Wage Study is a lengthy detailed document showing the steps made, the assignment of points, and the Committee's method of evaluation on attached charts. For thorough understanding of the Study and product the Study must be available so it is made a part of these findings. The study is Defendant's Exhibit 1–B.

## CONCLUSIONS OF LAW

■ 1. The defendant's motion for a Partial Summary Judgment limiting the scope of the claim to extend from January 8, 1962 to February 20, 1970 is sustained. The plaintiffs filed this action on January 8, 1965 and the claim back is limited by the Canal Zone statute of limi-

tations of 3 years, 5 CZC 41, 42(3). Forward the claim is limited by the effective date of the amendment to the administrative regulation issued by the Secretary of the Army amending Section 253.131 changing the method of establishing the "rates of pay for pilots" in Canal Zone waters. The effective date was February 20, 1970.

This matter went up on appeal to the Fifth Circuit on the question of whether Panama Canal pilots have a right under either 2 CZC Section 146 or 35 CFR 253.135 to an overseas (tropical) differential. The Circuit Court held that the pilots had no statutory right to a fixed differential but that the pilots do have a right arising out of the Secretary's regulation and the matter was remanded to this Court "for further proceedings." Reinheimer v. Panama Canal Company, 5 Cir., 413 F.2d 153, 1969; also see Leber v. Canal Zone Central Labor Union, et al., 383 F.2d 110, 5th Cir. 1967.

The Secretary's regulation provided that the pilots' base pay shall be established "in relation to rates for the same or similar work performed in the continental United States by employees of the Government of the United States," 35 CFR 253.131(b), and plaintiffs' claim is based on this regulation to the effect that the defendant failed to fix the base pay in accordance with the regulation and add to it the correct differential, for part of the period 25% and since 1964 the 15% now in force. On February 12, 1970 the Secretary issued an amendment to be effective on its appearance in the Federal Register. Its publication occurred on February 20, 1970 (Federal Register Vol. 35, No. 36, p. 3232), and paragraph (b) of Section 253.131 was revised and a new paragraph (c) was inserted as follows:

> "Rates of pay for pilots employed in navigation of vessels in Canal Zone waters shall be established in relation to grade levels 12 to 14 inclusive of the Non-Manual Schedule as the Panama Canal Company may determine."

The record is clear that from the date of the beginning of plaintiffs' claim that their salaries have been fixed "in relation" to NM–12 to 14 grade levels as required by the amendment. Plaintiffs have not attempted to plead or prove otherwise. As any claim that plaintiffs have rests upon the regulation of the Secretary of the Army and its thrust is confined to the period prior to the amendment for noncompliance with the then existing regulation, the claim was terminated by the adoption of the amendment.

■ 2. The issues in the case involve administrative action that is committed to agency discretion by law. Plaintiffs would have this Court hold that as the defendant was in error, as determined by the Fifth Circuit, in coming to the conclusion that there was no "similar position" to the Canal Zone pilots in the continental United States that it has no expertise and is not entitled to the position of unassailability ordinarily accorded to an agency by statute; that if this Court ordered the Wage Study it should evaluate every step of the defendant's pay procedure, make any necessary changes, and substitute its own pay plan if necessary. Such actions are beyond the power of this reviewing Court as its scope of review is no wider than in the beginning of the litigation and unless the actions of the defendant or its agents are arbitrary, capricious, or an abuse of discretion, it will not intervene. Even then the Court would be limited to ordering a restudy by the agency in a manner that would eliminate its capricious, arbitrary, indiscreet actions. This Court is not qualified in the field of fixing pay rates and does not have in its personnel individuals who could be substituted for the agency. If it were proven that the agency displayed conduct so capricious, arbitrary or indiscreet that its actions could in no wise be acceptable, nor could it be trusted to conduct a wage study with its personnel, then and only then could the Court order or undertake a study independent of the agency. No such condition has been shown to exist and quite to the contrary the Wage Study bears every indicia of honesty,

integrity, and freedom from the characteristics condemned by statute. 5 U.S.C.A. § 701; Kletschka v. Driver, 411 F.2d 436, 2d Cir. (1969).

■ In numerous decisions cited in defendant's brief the courts have refused to intervene in wage fixing and have decided that such matters address themselves to agency discretion. Adams v. United States, 141 Ct.Cl. 133 (1958); Mitchell v. McNamara, 122 U.S.App.D.C. 224, 352 F.2d 700 (1965); Crawford v. United States, 376 F.2d 266, 179 Ct.Cl. 128 (1967) a case involving the fixing of the basic pay of teachers in military departments "in relation" to basic compensation for "similar" positions in the United States. The Court of Claims said that the phrase "in relation to" did not mean "equal to" the salaries of teachers in the District of Columbia and left the comparability to teachers in the United States up to the Secretary of Defense. Other cases cited strongly support the position that the President of the Panama Canal Company has the administrative task and responsibility of establishing plaintiffs' salary and this Court will not tell him what base wage he should adopt but will merely determine whether plaintiffs have established that his action, the Wage Study, was so arbitrary as to be clearly wrong. This they have failed to do. Daniels v. United States, 407 F.2d 1345, 187 Ct.Cl. 38 (1969); Albert v. United States, 437 F.2d 976, 194 Ct.Cl. 95 (1971); and Almeda v. United States, Ct.Cl., 453 F.2d 1397 (1972).

3. The method of fixing wages by job evaluation is, of necessity, somewhat arbitrary. The creating of elements and factors, plus the assignment of point values, is a process of "give and take" as practiced by the Committee and thus the science is inexact and dependent upon expert knowledge in both the qualities of the job under study and the technique of weighting. It is quite easy to transpose an exact job from the United States to the Canal Zone and add the pertinent overseas differential. No problem exists when there is an exact counterpart such as a doctor, lawyer, or secretary who receives a fixed wage in the Federal Service in the United States and one is employed in the Canal Zone to do the same work.

When a problem of comparison of "similar" positions arises, however, such as the case at bar, the matter is not easy and is fraught with pitfalls. Who can say with exactitude that out of a total points of 1,000 the assignment of a point value for "experience, training and license requirements" in piloting should be 140 points, while the value for "mental effort" should be 100 points and "responsibility for damage to property" should be 100 points? Another study committee with equal expertise might assign higher or lower points to any one of these factors with just as much justification and might even introduce other factors, and a third committee might vary in its assignment of points and selection of factors from the first two. So the whole thing becomes a matter that rests upon the qualifications, experience, and honest effort of the committee and this has been successfully displayed.

4. A wage curve or a pay line is a device to show the relationship between the point values of the point system or evaluated rates of the factor comparison method and form a wage standard such as the one in this case. Its use with three or four other positions may have been more advantageous to plaintiffs or defendant. This is unknown for it was not used but it is not believed that a restudy directing its use would be any more exact or equitable than the methods employed by the Committee.

5. Plaintiffs urge that the MSTS position should have been used as the most "similar" but it was not shown at the hearing that any more favorable or just results would have been achieved. The proper evaluating, weighting, and application of the data to determine the wage sought from any "similar position" was the goal and the plaintiffs have not established that the study was outside the accepted norms nor that it could not be used as an objectively determined

guide for fixing the Canal Zone pilots' base wage.

■ 6. After the careful and complete hearing on the matter involving the extensive and detailed study that has been made and the attack upon it, it is quite apparent that no judgment should be awarded to the plaintiffs over and above the amount found to be due under the study, nor should judgment permitting recoupment be awarded to the defendant against any of the pilots having received any "overage" as a result of the calculations made as a consequence of the study—this in spite of CONCLUSION OF LAW No. 3 in the First Hearing.

■ The plaintiffs are excellent employees of this subsidiary of the United States Government and have been well paid but not overpaid during the period of the claim and thereafter. This Court takes judicial notice (5 CZC 2761) of the working conditions generally that exist here and, as a result of the hearing in this case and others involving the plaintiffs (Abbott v. United States, 151 F. Supp. 929, 138 Ct.Cl. 459 (1957); Boyd v. Panama Canal Company, D.C., 160 F. Supp. 50, 1958), that the pilots' jobs are good, well-paid jobs and there has been no dearth of applicants for them since 1962 (the beginning of the claim). The purpose of the differential was to stimulate "recruitment and retention incentive". 5 U.S.C.A., Sec. 3038; Leber, supra. This being true in no way militates against legal entitlement to a differential but the fact that the posts filled by plaintiffs have been consistently filled is indicative that the pay has been adequate. The defendant, although guilty of not following the regulations of the Secretary of the Army, as decided in the appeal in this case rendered on June 20, 1969, has attempted to coordinate the salaries of its personnel in an effective and equitable manner. If it had followed the MSTS salaries and treated them as base pay and added to them a 25% or 15% differential, conditions would have existed whereby the pilots' salaries would have exceeded that of their superiors. Such a situation is not good pay practice

and the adoption of the GS–12 to 14 (now NM–12 to 14) was a wise plan of coordination that was approved by the Study Committee and is now successfully being followed as a result of the new regulation of the Secretary of the Army.

The Wage Study that was made pursuant to the order of this Court established successfuly that the wages of the plaintiffs were close to what they should be when compared to a "similar work performed in the continental United States by employees of the Government of the United States." An adoption of the report in its totality would permit judgment to be granted by the defendant against numerous pilots who had been pilots in training and in the lower echelons during the years of the claim thus working a hardship on them through no error of their own. In turn, if judgment were to be given for the plaintiffs as claimed, with the MSTS Masters' rates as base pay plus the differential, plaintiffs would recover large sums from an agency of the United States Government whose personnel staff was trying to comply with the law, and who in fact could have requested another method of fixing plaintiffs' wages (35 CFR 253.6) but did not comply with the regulation of comparability through error of judgment but not by reason of arbitrariness, capriciousness, nor indiscretion.

The defendant shall follow the Wage Study as a guide in computing the plaintiffs' base pay and then affix the proper differential and any amount found to be due the plaintiffs individually shall be paid to each of them. In making the computations the defendant shall be entitled to offset the overage it may have paid against the amounts due but no recoupment may be had against any one of the plaintiffs as any error of overpayment was done through defendant's mistake and its planning of payment in accordance with the pilot levels and it shall not be permitted to take advantage of this to the detriment of any individual pilot so as to require him to make restitution. In making this ruling it is kept

in mind that the study is a "guide" and that the agency must fix the salaries "in relation" to similar positions and the salaries paid do not violate these concepts.

The defendant shall bear the costs of the action (see 3 CZC 371) including the expense of the study except that the costs of the taking of the depositions attacking the study by the plaintiffs shall be borne by them.